## The Pennsylvania Railroad Co. *versus* Vandever.

In an action on the case by a widow against a railroad company, for an act of the defendants' agents, which resulted in causing the death of the plaintiff's husband, it is error to charge the jury as follows: "The question of damages is for you; should you feel it necessary to examine that question, let fair and exact justice be your guide, and your own good sense will determine it."

Under the Act of 26th April 1855, the sum to be recovered is the pecuniary loss which the plaintiffs have suffered from the death of their relation; nothing can be recovered as a *solatium* for wounded feelings, or by way of vindictive damages.

In such cases, it is the duty of the court to give definite instructions to the jury as to the true measure of damages.

The Pennsylvania Railroad Company *v.* Zebe, 9 *Casey* 318, affirmed.

ERROR to the Common Pleas of *Chester county.*

This was an action on the case by Sarah Vandever, the widow of John Vandever, deceased, against the Pennsylvania Railroad Company, for an alleged injury inflicted by the defendants' agents upon the plaintiff's husband, which resulted in causing his death.

On the 6th of December 1856, John Vandever took his seat in the car of the Pennsylvania Railroad Company, as a passenger from Philadelphia to Parkesburg. Soon after leaving West Philadelphia, the conductor and the state agent applied to him for his ticket, which he failed to produce, alleging that he had paid his fare. They told him it would be necessary to produce his ticket, or pay his fare, or that they would be obliged to put him off the train. They told him to search for his ticket, and proceeded to collect the tickets from other passengers. After some time, they returned, and he being still unable to produce his ticket, and refusing to pay his fare, they proceeded to remove him from the train. He was under the influence of liquor, but not so much as not to know what he was doing.

The train was stopped at Paschall's Station, and was standing still when they removed him. The state agent, the conductor, and Vandever passed out at the rear end of the car, on to the platform, and the conductor got off upon the ground first. Vandever went down the steps backwards, holding by the railing on each side. He had one foot on the ground, and the other on the lower step of the platform; still holding on by the railing, the state agent broke loose his hold, and in so doing, Vandever fell and rolled over on his back. The state agent and the conductor immediately raised him to his feet. His hat had blown down the bank. They showed him where it had gone, and he started after it. He walked part way down the bank, then his speed increased,

[The Pennsylvania Railroad Company *v.* Vandever.]

and he fell head foremost among some large stones at the foot, just as the train passed out of sight. Not long afterwards, he was found lying at the foot of the bank; taken to a stable across the railroad, and left there till next morning; was then removed to Mr. Bonsall's house, where he remained till the following morning, and was then taken home. No physician was called till he reached home. He died about a week afterwards.

The court below delivered the following charge to the jury:—
"The action you are trying is one brought by Sarah Vandever against the Pennsylvania Railroad Company, to recover damages for an alleged injury inflicted on the husband of the plaintiff. The prominent circumstances attending the case are briefly these: On the 6th day of December 1856, John Vandever, the husband of the plaintiff, took his seat in the car of the Pennsylvania Railroad Company, as a passenger from Philadelphia to Parkesburg. Soon after leaving the river, the conductor of the train, and the agent for the state, commenced to collect the tickets or fare of the passengers, and soon reached the seat occupied by Mr. Vandever. Of him they demanded his passage-money, or his ticket, and he was unable to find the latter, although he declared he had purchased a ticket in Philadelphia, at the office of the company. The conductor told him he must show his ticket or pay the price of passage, or they would be required to put him off the cars. After leaving him for some minutes, while they collected the fare from the other passengers, they returned to him, and, he being unable to find his ticket, and not paying the passage-money, they took him to the rear of the car and put him off. In stepping from the car, when he had got down to the lower step, he fell across the rail of the south track; his head and shoulders alighting on the ballasting of the road, between the two southern rails. After being assisted to rise, he walked after his hat, which had blown down the south side of the embankment—down the slope some half-way—when he pitched headlong down the embankment, and lay there apparently without motion. This occurred at what was called the Paschall Station, or some eighty or one hundred yards west of it, and about four o'clock in the afternoon. Between sundown and dark, he was found at or near the same place, insensible and unable to walk, and was taken over the railroad to the stable of a Mr. Bonsall, where he was laid on hay, and where he stayed all night. Early on Sunday morning, when he was visited by Mr. Bonsall and others, he seemed to have recovered consciousness; asked for water; told them, when they attempted to lift him, not to hurt him, and, with the help of those present, walked to the house. He complained of his left side, did not appear to have the use of his left arm, and moaned as though in pain considerably. His clothes were not torn, nor were they dirty, and a slight spot of

[The Pennsylvania Railroad Company *v.* Vandever.]

blood on his cheek showed the only external wound upon him. He remained at the house of Mr. Bonsall until the following morning, when he was placed in a car and conveyed to Parkesburg, and from thence to his own home, where he arrived on Monday evening. While he was at Bonsall's, no attention was given to his wounds. He ate but little, and during that time he appeared to be in his right mind. A physician was called in soon after he reached home, and on examination it was found that he was fearfully bruised on his head, shoulders, and down his back. He died on Monday, a week thereafter, and a *post mortem* examination disclosed a series of injuries which, from their aspects, were, in the opinion of the physician, sufficient to produce his death. It is for these injuries and their ultimate consequence, said to be inflicted by the improper conduct of the agents of the railroad, that this suit is instituted.

"From these prominent facts, and such others, of perhaps less moment, as you have heard, and which I shall hereafter advert to, together with the law applicable to the case, you will decide this controversy. These parties meet here on equal terms. They have their several rights and duties. The responsibilities of courts and juries consist in doing, or endeavouring to do, equal and exact justice to all. In the law and evidence must be found the elements of an honest and impartial verdict. Any outside influences, come from what quarter they may, whether from the zeal and declamations of counsel, the whisperings of interested parties, or the impulses of sympathy, are fatal to the just rights of society, and the social intercourse of men. Those elements which sustain that social confidence, which affords security in the ordinary affairs of life, consist in equal and exact justice. No inequality of condition among parties, whether of wealth or consequence, should become an ingredient in the verdict of a jury. All our rights of property, all the security of life and liberty, everything which is solid in our social affairs, depend upon the honest enforcement of just principles of law, and a strict adherence to facts, in the administration of civil and criminal jurisprudence.

"I make these general observations, for the reason that in the case before you, the plaintiff is a woman, suing an incorporated company, for injuries alleged to have been inflicted by the company upon the husband of the plaintiff. It is a case well calculated to excite our sympathies, and to urge us to disregard the undoubted rights of the parties. What are these rights? We find it laid down in our legal authorities, that persons to whom the management of a railroad is intrusted, are bound to exercise the strictest vigilance. They must carry the passengers to their respective places of destination, and set them down safely, if human care and foresight can do it. They are responsible for every injury caused by defects in the road, the cars or the engine, or by

[The Pennsylvania Railroad Company *v.* Vandever.]

any species of negligence, however slight, which they or their agents may be guilty of. But they are answerable *only* for the direct and immediate consequence of errors committed by themselves. They are not insurers against the perils to which a passenger may expose himself by his own rashness. It is a rule of law, from time immemorial, and is not likely to be changed, that there can be no recovery for an injury caused by mutual negligence or default of both parties. A railroad company is not liable to a passenger, for an accident which the passenger might have prevented by ordinary attention to his own safety, even though the agents in charge of the train are also remiss in their duty. It is true, that a person is not chargeable with neglect of his own safety, when he exposes himself to one danger, by trying to avoid another. In such a case, the author of the original peril is answerable for all that follows. These principles are the law of the land, and must govern courts and juries in the decision of cases where they are applicable.

"To advert again to the facts as the evidence has furnished them. The conductor, when engaged in the collection of the tickets, found Mr. Vandever asleep. He shook him until he was awake, when he demanded his ticket. It was refused, with the observation that he had paid his fare in Philadelphia, and he did not show it. To a passenger he said, it was his receipt, and he would not give it up. Had he handed his ticket to the conductor, as is usual with passengers, the probability is, he would have been living now, and his unfortunate death would not have occurred. Not delivering it, the conductor told him he must go out. Was he right, under the circumstances, to put him out? The conductor was told by another passenger that Mr. Vandever had paid his passage. Did that alter the case? It was the duty of the agent of the company to collect the tickets. A railroad ticket being transferable by delivery, evidence that the deceased purchased and paid for one, did not give him a right to ride in the company's car, without proof also of its destruction. The deceased being in the defendants' cars, and refusing to show a ticket, or to pay his fare, upon the request of the conductor, was bound to leave the cars, and upon refusal to do so upon request, might be lawfully ejected therefrom. The agents of the company, if the testimony is believed by the jury, had a right to remove him from the cars, if in so doing they used no more force than was necessary, and other circumstances did not concur to weaken their right. On getting to the platform, Mr. Vandever went backwards down the steps, and fell on the railroad heavily. It is for you to say, from the evidence, whether more force was used than was necessary in removing him from the car. The testimony would seem to show, there was not.

"Supposing, however, the jury should conclude that the agents of the company used force unnecessary (of which I see no evidence),

[The Pennsylvania Railroad Company *v.* Vandever.]

did he receive the injuries, of which he died, from the fall upon the railroad ? That he was hurt by the fall, that he fell heavily, is in evidence and for your consideration; but were the wounds inflicted upon him caused by the fall from the steps of the cars ? The train, it would seem, was standing. His foot, according to one witness, must have struck against the rail, and he fell on his seat and rolled over; he was assisted to get up, and stood a few seconds looking around, then walked to the brink of the bank and part way down; still, if unnecessary force was used, and he received his injuries in his fall at the step, by reason of that force, and not from intoxication, the plaintiff can recover. When part way down the bank he fell headlong forward. Were his injuries inflicted in that way and from that cause ? If they were produced in that way, they could not then have been received from the fall at the steps. If he received the injury that produced his death, in falling at, or near the foot of the bank, inasmuch as it was not the direct and immediate consequence of removing him from the cars, the defendants are not answerable therefor, unless he did so, to escape another danger into which the agent of the company had placed him. I cannot see in the evidence any reason to believe, that in running down that rugged bank, he was escaping from any other danger. The jury will say whether, from the evidence, his death was the direct and immediate consequence of his removal from the car.

"Much has been said about the inhumanity of turning out Mr. Vandever from the cars, at such a time and such a place, and of leaving him to die after he was thus injured. These observations should not be considered of much consequence in the consideration of the case. The rights of the parties are the questions we are endeavouring to determine. I know of no law which gives to the passenger the right to choose where he shall be put out.

"On the whole, if the force was no more than necessary to put him out; if he did not receive his injuries from the immediate act of the defendants' agents, or in endeavouring to avoid a peril into which they placed him, the plaintiff cannot recover. If it was occasioned by his own imprudence, or rashness, or folly, he must bear, and those with whom he was connected, must bear the loss to themselves. If, by the negligence of the agents of the company, or the use of unnecessary force, his injuries were inflicted, the plaintiff can recover, and should receive your verdict. *The question of damages is also for you. Should you feel it necessary to examine that question, let fair and exact justice be your guide, and your own good sense will determine it.*"

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiff for $1734, the defendants removed the cause to this court, and here assigned for error, *inter alia*, that the court below erred in their charge to the jury as to the measure of damages.

[The Pennsylvania Railroad Company v. Vandever.]

*W. Darlington*, for the plaintiffs in error.—The charge on the subject of damages was erroneous; no rule was laid down, nor any instruction given, except to do fair and exact justice. This was quite too loose, as was decided in The Pennsylvania Railroad Company *v.* Zebe, 9 *Casey* 327.

*P. F. Smith* and *W. Butler*, for the defendant.—As no instruction was asked on the subject of the measure of damages, the defendants have no right to complain of an omission to charge on that point. The court said nothing that was wrong upon the subject; if a fault was committed, it was one of omission, on a point in relation to which no instructions were asked: Rahn *v.* McElrath, 6 *Watts* 155; Churchman *v.* Smith, 6 *Wh.* 153; Brittain *v.* Doylestown Bank, 5 *W. & S.* 100; McClure *v.* McClure, 1 *Barr* 378; Dennis *v.* Alexander, 3 *Id.* 51; Crowell *v.* Meconkey, 5 *Id.* 177; Siegle *v.* Louderbaugh, *Id.* 491; Burns *v.* Sutherland, 7 *Id.* 108; Lea *v.* Hopkins, *Id.* 498; Uplinger *v.* Bryan, 2 *Jones* 220; Klein *v.* Franklin Insurance Co., 1 *Harris* 249; Holliday *v.* Rheem, 6 *Id.* 470; 9 *Id.* 280; Weamer *v.* Juart, 5 *Casey* 260; Reeves *v.* Delaware Railroad Co., 6 *Id.* 460.

The opinion of the court was delivered by

READ, J.—The only real error assigned in this case is to the charge of the judge on the subject of damages, which was in these words: "The question of damages is for you. Should you feel it necessary to examine that question, let fair and exact justice be your guide, and your own good sense will determine it." This was clearly wrong; and is covered by the decision of this court in the Pennsylvania Railroad Company *v.* Zebe: 9 *Casey* 318.

Under Lord CAMPBELL'S Act, it is now entirely settled in England, that actual pecuniary damage must be proved to have been sustained by the relatives of the deceased person, and that the person for whose benefit the action is brought had some pecuniary interest in the life of the person killed. It was intended by the act, to give compensation for damage actually sustained, and not to enable persons to sue in respect of some imaginary damage, and so punish those who are guilty of negligence, by making them pay costs.

The present Lord Chancellor (CAMPBELL), in the late case of The Attorney-General *v.* Brunning, in the House of Lords, 3 *Law Times R.* (*N. S.*) 36, decided on the 23d May last, says: "It is then urged, that probate is only to be granted of that which is of definite value; that the executor could have put no definite value on his right to sue upon this contract, and that an executor might as well be called upon to include in his return of the estate and effects of the testator, the value of his hope of recovering damages under a recent act of parliament, if the testator had come to his

[The Pennsylvania Railroad Company *v.* Vandever.]

death by the negligence of a railway company. But this is only a renewal of the objection that the only course for the executor to take was to sue for damages in respect of the breach of contract, waiving his remedy by bill for specific performance or by petition, by which the exact amount of the purchase-money might have been recovered. The sum to be recovered in case of death, by negligence, truly would not be subject to probate duty, for it is not made part of the estate of the deceased, and on the contrary the act of parliament directs it to be appointed among the family of the deceased, according to the *pecuniary loss* which they are supposed respectively to have suffered from the bereavement."

This is clearly the meaning also of our Act of 26th April 1855, which limits the persons entitled to recover damages to the husband, widow, children, and parents of the deceased, and which provides that the sum recovered shall go to them in the proportion they would take his or her personal estate, in case of intestacy, and that without liability to creditors. The sum to be recovered is, therefore, the pecuniary loss which the plaintiffs have suffered from the death of their relative; and this is made more certain by the provision, that no other relative, and of course no other person, than those named, can recover anything; as to all the world except the designated relatives, the old law remains.

The Scotch law differs from the English law, both as to the right to recover, and the measure of damages, the former including a *solatium* for wounded feelings, as well as an indemnification for damages: Paterson *v.* Wallace, 1 *Macq. House of Lords Cases* 748; *Paterson's Compendium of English and Scotch Law* 183, n. 4; and it would seem, that the same doctrine prevailed by the civil law, and by the law of France: Cary *v.* Berkshire Railroad Co., 1 *Cush.* 480.

Such, however, is not the measure of damages in Pennsylvania, nor we believe in most of our sister states, it being confined to the pecuniary loss, and not including any *solatium* whatever. In this view of the subject, it is clear, that the court below should have given definite instructions to the jury, as to the true measure of damages, for under the broad rule laid down, they might have thought it within their province to give a *solatium* for wounded feelings, or highly vindictive damages.

It is more necessary, in cases of death, to lay down the rule of damages clearly and distinctly, as it applies, as is correctly said by a learned judge, " not only to great railway companies, but to little tradesmen, who send out a cart and horse in the care of an apprentice." And so sensible have been some of our neighbouring sister states, such as New York, New Jersey, and Ohio, of the danger of excessive damages in such cases, that they have limited them to five thousand dollars, an example which we have not yet followed. There is nothing in the other two specifications of error.

Judgment reversed, and a *venire de novo* awarded.