## McHugh *v.* Schlosser et al., Appellants.

*Innkeeper—Duty to guests—Intoxication—Illness.*

If a guest in a hotel by reason of intoxication is troublesome and annoying to the other guests of the house, the proprietor of the hotel may rightfully put him out of the house, using no unnecessary force or violence. If, however, the trouble and disturbances caused by the guest are due to his sickness, he must be treated with the consideration due to a sick man, and, if he is removed, such removal must be in a manner suited to his condition.

In an action to recover damages for the death of a guest alleged to have been caused by his wrongful removal from a hotel during his illness, the question to be considered is not whether the exposure of the deceased would have surely caused his death, but what were the consequences which it was reasonable to suppose might follow a sudden exposure of the deceased in the condition in which he then was.

*Negligence—Death—Damages—Evidence—Charge of court.*

In an action for death the true measure of damages is the pecuniary loss suffered, without any solatium for mental suffering or grief ; and the pecuniary loss is what the deceased would probably have earned by his labor, physical or intellectual, in his business or profession, if the injury that caused death had not befallen him, and which would have gone to the support of his family. In fixing this amount, consideration should be given to the age of the deceased, his health, his ability and disposition to labor, his habits of living, and his expenditures.

In such a case where there is no evidence to show the earning powers, or the habits of industry and thrift of the deceased, it is improper for the court to charge that the jury might estimate from the age, health and habits of the deceased, his earning capacity and the pecuniary loss of the plaintiff.

Argued Nov. 3, 1893. Appeal, No. 237, Oct. T., 1893, by defendants, John B. Schlosser and G. C. Dellenbach, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1892, No. 453, on verdict for plaintiff, Mary McHugh. Before STERRETT, C. J. GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for damages for death of plaintiff's husband, alleged to have been caused by exposure while being wrongfully and improperly removed from defendants' hotel.  Before McClung, J.

At the trial, it appeared that on Jan. 31, 1891, A. B. McHugh went to defendants' hotel, registered, and was assigned a room, paying for it at the time.   There was evidence that for several days prior to his coming to defendants' house he had been drinking heavily.   The manner in which deceased was removed from the hotel is described in the opinion of the Supreme Court.

The court charged in part as follows :

" Now, having eliminated from the case the question as to whether this man went of his own motion, simply after a request, or whether he was thrust out, and assuming that you have decided that he was thrust out (because, under my instructions, unless you do find that you cannot go any further), [then the question here is, was this man thrust out as a drunken man who was persisting in disorderly conduct in that hotel, or was he a sick man whose annoyance, if his conduct was annoying, came from his sickness.   And for that purpose it doesn't make any difference whether his sickness, if he was actually sick, came from the abuse of liquor or from any other cause. Simply because a man has made himself sick by liquor, if he is a sick man, a hotel-keeper cannot treat him as a willful wrong-doer ; he must treat him as a sick man and regulate his conduct accordingly.] " [3] . . . .

" This plaintiff sues for compensation for her husband's death.   It is not necessary, I take it, that she should prove how much money he was making, one year and the other.   His age was proven and the condition of his health was proven, as also his habits, and it is for you to say how much his life was worth to her ; how much better off financially she would be with him than without him ; how much would he earn, and how much of those earnings would go to her and her children. This is for you to say, gentlemen ; and while you have no very exact rule to go by, yet it is a question upon which your judgment is as good as that of the court, and the laws leave it to you, and can safely leave it to you.   It is a matter of cold dollars and cents when it comes to this question, and it is perfectly proper for you to take into account the proof that is here as to this man's condition, the condition of his health, and as

to his habits. They will affect both the probabilities as to the length of his life and the amount of money that he will earn. A man that has a disease that is likely to carry him off at 39 years of age, his life might not be so valuable as an older man in better health. Take all these things into consideration and render such a verdict as under the evidence and instructions of the court your conscience will warrant."

Defendant's points were among others as follows:

"1. This is an action to recover the monetary value of the life of A. D. McHugh to his widow and children. As plaintiffs have not shown, nor attempted to show, the earning power of the deceased, or that he contributed anything to their support, nothing more than nominal damages can be recovered in this action." Refused. [1]

"3. If the deceased remained in defendants' house after the evening of January 31, 1891, and so acted as to annoy the other guests of the house, and abused and soiled the room and furniture of defendants, it was their duty to their other guests and their right to remove him, provided they used no unnecessary force or violence. Answer: Refused as put. If the annoying acts were willful, defendants could remove decedent in the manner stated in the point. If, however, they were the result of sickness, although they might under certain circumstances remove him, such removal must be in a manner suited to his condition." [2]

4. Stated in opinion of Supreme Court. Refused. [4]

Verdict for plaintiff for $6,175. A remittitur was subsequently filed for twenty-five per cent of the verdict. Judgment was then entered for $4,955.43. Defendants appealed.

*Errors assigned* were (1–4) instructions, quoting them.

*Willis F. McCook*, for appellants, cited: Act of April 26, 1855, P. L. 309; R. R. v. Zebe, 33 Pa. 322; R. R. v. Butler, 57 Pa. 335; R. R. v. Jones, 128 Pa. 308; Allegheny City v. Zimmerman, 95 Pa. 294; Haverly v. R. R., 135 Pa. 60; Fairbanks v. Kerr & Smith, 70 Pa. 86.

*John Marron*, for appellee, cited: R. R. v. Keller, 67 Pa. 300; North Penna. R. R. v. Kirk, 90 Pa. 15; R. R. v. Jones, 128 Pa. 308.

OPINION BY MR. JUSTICE WILLIAMS, January 22, 1894:

The defendants are hotel keepers in the city of Pittsburgh. McHugh was their guest and died in an alley appurtenant to the hotel on the second day of February, 1891. Mary McHugh the plaintiff is his widow, and she seeks to recover damages for the loss of her husband, alleging that it was caused by the improper conduct of the defendants and their employees. An examination of the testimony shows that McHugh came to the Hotel Schlosser late on Friday night, January 30th, registered, was assigned to and paid for a room for the night, and retired. On Saturday and Sunday he complained of being ill and remained most of both days in bed. A physician was sent for at his request, who prescribed for him. He also asked for and obtained several drinks during the same time, and an empty bottle or bottles remained in his room after he left it. During the forenoon of Monday he seemed bewildered and wandered about the hall on the floor on which his room was. About the middle of the day the housekeeper reported to Schlosser that he was out of his room and sitting half dressed on the side of the bed in another room. Schlosser and his porter both started in search of McHugh, and Schlosser seems to have exhibited some excitement or anger. He was found and the porter led him to his room. While this was being done Schlosser said to him " You can't stay here any longer ; " to which McHugh replied " I'll git." The porter, on reaching his room, put his coat, hat and shoes on him and at once led him to the freight elevator, put him on it, and had him let down to the ground floor. He then took him through a door, used for freight, out into an alley some four or five feet wide, that led to Penn avenue. Rain was falling, and the day was cold. A stream of rain water and dissolving snow was running down the alley. McHugh was without overshoes, overcoat or wraps of any description. When the porter had gotten him part way down the alley he fell to the pavement. While he was lying in the water and the porter standing near him, a lady passed along the sidewalk on Penn avenue and saw him. She walked a square, found officer White, and reported to him what she had seen. He went to the alley to investigate; and when he arrived McHugh had been gotten to his feet, but was leaning heavily against the wall of the hotel, apparently unable to step.

The porter was behind him with his hands upon him, apparently urging him forward. What followed will be best told in the officer's own words. He says: "I asked what's the matter with this man, Mr. Powers? He says, he's sick. I says he ought to have something done for him, and at that time he fell right in the alley on his back. He had his coat open, no vest, and his shoes were untied. He had strings in his shoes but not tied." The officer was asked if the man spoke, after he reached the place where he was; and he replied thus: "He spoke to me. Somebody said he was drunk. He rolled his eyes up and he says, 'Officer, I am not drunk; I am sick; I wish you would get an ambulance and have me taken to the hospital.' Then I ran to the patrol box." It required about twenty minutes to get an ambulance on the ground. During all this time the man continued to lie on the pavement in the alley. At length, after an exposure of about half an hour in the storm and on the pavement, the ambulance came. He was placed on a stretcher, lifted into the ambulance and taken to police headquarters and thence to the hospital, but all signs of life had disappeared when he was laid on the hospital floor. The post mortem examination disclosed the fact that the immediate cause of death was valvular disease of the heart. The theory of the plaintiff was that the shock from exposure to wet and cold in the alley had, in his feeble and unprotected condition, brought on the heart failure from which he died; and as the exposure resulted from the conduct or directions of the defendants, they were responsible for his death.

Three principal questions were thus raised: First, what duty does an inn keeper owe to his guest? Second, what connection was there between the defendants' disregard of their duty, if they did disregard it in any particular, and the death of Mr. McHugh? Third, if the plaintiff be entitled to recover, what is the measure of her damages?

The attention of the court was drawn to the first of these questions by the defendants' third point, in which the learned judge was asked to instruct the jury, in substance, that if the deceased was troublesome to the defendants and annoying to their guests they might rightfully put him out of their house if they used no unnecessary force or violence. This point was refused, as framed, but the learned judge proceeded to state the rule thus: "If the annoying acts were willful, defend-

ants could remove decedent in the manner stated in point.    If however they were the result of sickness, although they might under certain circumstances remove him, such removal must be in a manner suited to his condition." This was saying that if McHugh was intoxicated, and the disturbances made by him were due to his intoxication, he might be treated as a drunken man; but if he was sick, and the disturbances caused by him were due to his sickness, he must be treated with the consideration due to a sick man. This is a correct statement of the rule.    In the delirium of a fever a sick man may become very troublesome to a hotel keeper, and his groans and cries may be annoying to the occupants of rooms near him, but this would not justify turning him forcibly from his bed into the street during a winter storm.    What the condition of the decedent really was, went properly to the jury for determination. If they found the fact to be that he was suffering from sickness, then the learned judge properly said that, if his removal was to be undertaken, it should be conducted in a manner suited to one in his condition.

The second question was raised by the defendants' fourth point, which was as follows : " If McHugh died of heart disease, and defendants had no reason to believe that he was so sick that his removal from the house would cause his death, they cannot be held responsible in this action, even though the mere incident of his removal from the house may have in some degree contributed to bring it on at that time." This was refused. It could not have been affirmed without qualification; but its refusal without more left the jury without any rule whatever upon the subject.    The question which the defendants were bound to consider before putting the decedent out in the storm, was not whether such exposure "would" surely cause death, but what was it reasonable to suppose might follow such a sudden exposure of the decedent in the condition in which he then was?    What were the probable consequences of pushing a sick man, in the condition the decedent was in, out into the storm without adequate covering, and when he fell from inability to stand on his feet, leaving him to lie in the stream of melting ice and snow that ran over the pavement of the alley, for about a half hour in all, in the condition in which officer White found him ?

The third question was raised by the defendants' first point.

No evidence was given tending to show the earning powers, or the habits of industry and thrift, of the deceased. For this reason the court was asked to instruct the jury that "Nothing more than nominal damages can be recovered in this action." This was refused and the jury was told in the general charge that as the evidence fixed his age, and gave information about his health and habits, they might from this data estimate his earning capacity and the pecuniary loss of the plaintiff. Now it is true, as said in Penna. Railroad Co. v. Keller, 67 Pa. 300, that since the acts of 1851 and 1855 life has a value which the law will recognize, and which the survivors who are entitled to sue may recover at law. It is true that this value is to be fixed by the jury in view of all the circumstances, and it is not necessarily limited to what is known as nominal damages. But it is also true that, when the probable earnings of the deceased are to be taken into account in fixing the damages, it is the duty of the plaintiff to show the earning power of the deceased, or give such evidence in regard to his business, business habits, and past earnings, as may afford some basis from which earning capacity may be fairly estimated: Railroad Company v. Zebe, 33 Pa. 318; Railroad Company v. Vandever, 36 Pa. 298. The true measure of damages is the pecuniary loss suffered, without any solatium for mental suffering or grief; and the pecuniary loss is what the deceased would probably have earned by his labor, physical or intellectual, in his business or profession, if the injury that caused death had not befallen him, and which would have gone to the support of his family. In fixing this amount, consideration should be given to the age of the deceased, his health, his ability and disposition to labor, his habits of living, and his expenditures. Penna. Railroad Co. v. Butler, 57 Pa. 335; Lehigh Iron Company v. Rupp, 100 Pa. 95; Coal and Coke Co. v. McEnery, 91 Pa. 185. It is very clear that the refusal of the first and fourth points without explanation left the jury without any adequate instruction on the important questions to which these points related. The consequence was a verdict based on the earning power of the deceased, which the learned judge felt constrained to reduce, and which was unsupported by the evidence. It will not do to permit such a verdict without some evidence from which the calculation of the pecuniary loss of the plaintiff may be made.

The judgment is reversed and a venire facias de novo awarded.