Orr *v.* William J. Burns International Detective Agency, Appellant, et al.

Argued January 8, 1940, reargued January 17, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*David F. Maxwell,* with him *George B. Clothier* and *Edmonds, Obermayer & Rebmann,* for appellant.

*Paul M. Goldstein,* with him *Abraham E. Freedman,* of *Freedman & Goldstein* and *Milton M. Borowsky,* for appellee.

OPINION BY MR. JUSTICE STERN, March 25, 1940:

Plaintiff was shot by an employee of the William J. Burns International Detective Agency, and sued that company and Moore & McCormack Co., Inc., for damages. A nonsuit was entered in favor of the latter, with-

out objection by any of the parties, and that defendant is no longer in the case. Plaintiff recovered a verdict against the Burns Agency, which now appeals from a refusal of the court below to sustain its motion for judgment n. o. v. It offered no testimony at the trial, choosing to rely upon its contention that its employee who did the shooting was not shown to have been acting in the course of his employment and within the scope of his authority, and that therefore the evidence was not sufficient to warrant the submission of the case to the jury.

In November, 1936, there was a seamen's strike along the Delaware River waterfront in the City of Philadelphia. Moore & McCormack Co., Inc., which operated Pier 53 in that locality, contracted with the Burns Agency, hereinafter referred to as defendant, that the latter should supply a certain number of men for the purpose of guarding, watching, and protecting the McCormack property and employees. On November 21, 1936, some of the strikers were picketing the McCormack pier, plaintiff being one of a group who were on "relief" picket duty on the westerly side of Delaware Avenue. Two seamen, Simpson and Dadicatoria, went up to the door of the pier, knocked, were admitted, remained for about twenty minutes, and then came out and started walking north on Delaware Avenue. Wood, a striker who was picketing at Pier 53, started to follow them. When they reached Pier 46, about a block north of Pier 53, they were overtaken by an automobile which had been driven out of the McCormack pier and north on Delaware Avenue, and in which were two men, Smith, who was driving the car, and Mason, both admittedly employees of defendant. When the automobile reached Simpson and Dadicatoria, Smith told them to "jump in in a hurry." They did so, and the car started up, but at that moment Wood came up, whereupon Smith jumped out and at the point of a gun ordered him into the car. Wood complied with this command. Plaintiff, with a few others

of his group, came over from the other side of Delaware Avenue "to see what it was all about." As he approached, Smith raised his gun. Plaintiff asked him why he had put Wood in the car; Smith in reply said, "I will show you, you little ——; you are going too," and he reached for plaintiff, grabbed him, started to force him into the car, shot him, and, turning on another of the strikers named Haiman, who was just behind plaintiff, shot him also. Police, who then arrived on the scene, took plaintiff and Haiman to the hospital and escorted the car that contained Smith, Mason, Simpson, Dadicatoria and Wood back to the McCormack pier.

It may be that Smith was overzealous in the performance of the duties for which he was employed, that he abused his authority, was reckless, and inflicted unnecessary injury, but all that would not relieve defendant from liability because, as was said by President Judge RICE in *Greb. v. Pennsylvania R. R. Co. (No. 1)*, 41 Pa. Superior Ct. 61, 66, "Not every deviation of the servant from the strict execution of his duty, nor every excessive use of force therein, nor every disregard of particular instructions will be such an interruption of the course of employment as to determine or suspend responsibility." An excerpt from the opinion of the court in *Rounds v. Delaware, Lackawanna & Western R. R. Co.*, 64 N. Y. 129, has been a favorite subject of quotation in our own cases: "It is in general sufficient to make the master responsible, that he gave to the servant an authority, or made it his duty, to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or re-

sponsibility, and commits to him the management· of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the·strict line of his duty or authority and inflicts· an unjustifiable injury upon· another": *Brennan v. Merchant & Co., Inc.*, 205 Pa. 258, 261; *Pilipovich v. Pittsburgh Coal Co.*, 314 Pa. 585, 589, 590.

Defendant seeks to break up the continuity of the events in this case, and then, as to each segregated happening, contends that the jury should not have been allowed to draw therefrom the inference necessary·to sustain plaintiff's case. Defendant· argues that it·is consistent with the evidence that Smith and Mason were not employed by defendant as guards but in some other capacity, that Simpson and Dadacatoria were not employees of the McCormack Company, actual or prospective, but were themselves on strike and holders of picket cards, that Smith hurried them into his automobile not to protect them but to give them a friendly "lift,"·that he forced Wood into the car at the point· of a gun because of some grudge or ill-will against him,·that he shot plaintiff· and Haiman out of pure malice, and even that he might have been "afflicted with temporary derangement." But if, instead of such hypotheses based on the dissection of what was really a unitary occurrence, the event is interpreted realistically and as a con-· nected whole, the jury might also, and it would seem more reasonably,·have drawn the inference,—and were therefore properly permitted by the court so·to do— that the assault by Smith was committed not·on his own account but to carry out the function which he was there to perform; that he was acting as.a guard, it being for that purpose only that his employer had a contract with the McCormack Company; that the seamen Simpson and Dadicatoria, if not employees of the McCormack

Company, and even though perhaps themselves on strike, were seeking employment from that company and were on friendly relations with it as indicated by their being allowed admittance to its pier in the face of the existing strike; that Smith took them into his car to protect them from the oncoming Wood, who, suspicious of their action in entering the pier, was seeking to question them; that when plaintiff, Haiman and others of the strikers approached, Smith, regarding them as the persons against whom he was to defend the McCormack property and employees, perpetrated the assault because of what he conceived to be a danger of aggression on their part as they came up to the car. There is nothing in the testimony to indicate that, in shooting plaintiff and Haiman, Smith had a purpose dissociated from that of his employment, or that he was engaging in what, by one of the drolleries of the law, is termed a "frolic" of his own. Since the jury found that he was acting within the scope of his authority, and since the testimony supports that finding as one reasonably inferable from the facts, even though not, of course, the only possible inference therefrom, the court properly refused to disturb the verdict.

It may be added that "Since the scope of the servant's employment is necessarily dependent on circumstances, a hard and fast rule cannot be laid down as to the scope of any particular employment; and it is ordinarily a question for the jury whether or not a particular act comes within the scope of a servant's employment": Simmons v. Pennsylvania R. R. Co., 199 Pa. 232, 238; Allen v. Bosternock, 107 Pa. Superior Ct. 332, 337. The only exception is where the facts and the inferences to be drawn from them are not in dispute: Brennan v. Merchant & Co., Inc., 205 Pa. 258, 261, 262.

Judgment affirmed.