## DeFulio v. Spectaguard

*Mark R. Kehoe,* for plaintiff.
*Francis J. Deasey* and *K. Craig McChesney,* for defendant.

GOLDMAN, *J.,* June 23, 1995—On May 16, 1988, plaintiff James DeFulio was climbing a fence to enter Veterans' Stadium to see a Pink Floyd concert. He did not have a ticket. As plaintiff neared the top of the fence he was climbing, he used his hand to grasp the ledge of a concrete platform above him. Testimony revealed that a security guard who was standing on the platform stepped on plaintiff's hand causing him

to fall 15 feet to a concrete concourse and fracture both ankles.

Plaintiff brought the instant suit against Spectaguard Inc. and Electric Factory Concerts Inc. alleging that they were vicariously liable for the guard's actions. Spectaguard employed the security guard in question and one of the guard's duties was to prevent people who did not have tickets from entering the stadium. In turn, Spectaguard was employed by Electric Factory who had leased the stadium from the City of Philadelphia for the concert and was, under the terms of the lease, under an obligation to provide security and ushering services at the concert. Following a trial held from November 14-17, 1994, the jury found in favor of plaintiff in the amount of $165,000 and against Spectaguard and Electric Factory.

Plaintiff filed timely a motion for delay damages which motion was granted in the amount of $48,418.43 for a molded verdict of $213,418.43.

Defendants filed a motion for post-trial relief requesting judgment notwithstanding the verdict and, in the alternative, a new trial. Defendants made numerous allegations, only one of which was mentioned by or supported by defendants' post-trial motion brief. This opinion addresses only the one argument that was briefed. Defendants' other allegations were deemed waived, *Amicone v. Shoaf,* 423 Pa. Super. 281, 288, 620 A.2d 1222, 1225 (1993); *Mamone v. Beltone Hearing Aid Services Inc.,* 416 Pa. Super. 555, 560, 611 A.2d 755, 757 (1992), though none appeared meritorious in any event.

Defendants argued that judgment n.o.v., and in the alternative, a new trial was warranted because the court permitted the jury to consider whether the guard was acting within the scope of his employment.

Defendants' post-trial motion was denied.

## I.

Judgment n.o.v. was not appropriate in this case. The party asking for judgment n.o.v. faces a heavy burden. All disputed facts must be examined in the light most favorable to the verdict winner. *Sundlun v. Shoemaker,* 421 Pa. Super. 353, 617 A.2d 1330 (1992). This preserves the role of the finder of fact. Additionally, to warrant the entry of judgment n.o.v., no two reasonable minds could fail to agree that the verdict was improper. *Cashdollar v. Mercy Hospital,* 406 Pa. Super. 606, 595 A.2d 70 (1991).

Defendants argued that there was no evidence that the guard's contact with plaintiff was within the course and scope of his employment and that the issue should not have been presented to the jury.

Under the doctrine of respondeat superior, the negligence of an employee may be imputed to the employer. *Fitzgerald v. McCutcheon,* 270 Pa. Super. 102, 410 A.2d 1270 (1979); *Advanced Power Systems Inc. v. Hi-Tech Systems Inc.,* 1994 WL 116121 (E.D. Pa.). It is well settled that an employer may even be held liable for the intentional torts of its employees. *Fitzgerald, supra; Pilipovich v. Pittsburgh Coal Co.,* 314 Pa. 585, 172 A. 136 (1934); *Butler v. Flo-Ron Vending Co.,* 383 Pa. Super. 633, 645, 557 A.2d 730, 736 (1989), *appeal denied,* 523 Pa. 646, 567 A.2d 650 (1989).

However, before an employer will be held liable for an employee's actions, it must be determined that the employee's actions occurred within the course and scope of his employment. *Id.* at 646, 557 A.2d at 736. Pennsylvania courts have adopted the Restatement (Second) of Agency §228 in determining whether an employee's conduct is done within the scope of employment:

"(1) Conduct of a servant is within the scope of employment if, but only if:

"(a) it is of the kind he is employed to perform;

"(b) it occurs substantially within the authorized time and space limits;

"(c) it is actuated, at least in part, by a purpose to serve the master, and

"(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

"(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little activated by a purpose to serve the master." *Advanced Power, supra* at 3 (quoting section 228); see also, *Fitzgerald, supra* at 107, 410 A.2d at 1271 (quoting section 228 with slight modification as follows: "(d) if force is intentionally used by the servant against another, the use of *the* force is not unexpectable by the master"). (emphasis added)

Where the evidence presents an issue of fact or where different inferences can be drawn, the jury decides whether the employee was acting within the scope of his/her employment. *Orr v. William J. Burns International Detective Agency,* 337 Pa. 587, 12 A.2d 25 (1940); *Straiton v. Rosinsky,* 183 Pa. Super. 545, 133 A.2d 257 (1957); *Fitzgerald, supra; Iandiorio v. Kriss & Senko Enterprises Inc.,* 512 Pa. 392, 517 A.2d 530 (1986). However, where the employee commits an act by using force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law. *Fitzgerald, supra* at 106, 410 A.2d at 1272; *Lunn v. Yellow Cab Company,* 403 Pa. 231, 169 A.2d 103 (1961).

Defendants conceded that the guard's conduct occurred within the authorized time and space and that it was "arguably actuated by a purpose to serve his employer." (Defendant brief 7-8.) However, defendants appeared to argue that there was no evidence that the guard's conduct was of the kind he was employed to perform. Further, defendants argued that there was no evidence that the force used by the guard (in stepping on plaintiff's fingers) was "not unexpected" by Spectaguard. In support thereof, defendants pointed to the testimony of Lewis Bostic, Spectaguard's Risk Manager. Mr. Bostic testified that "[i]t would be contrary to every instruction our people are given" to remove plaintiff from the fence as he described and that "there's no way they [guards] would grab or touch anybody climbing up that fence." (N.T. 151-54.)

Pennsylvania courts have addressed the issue of whether an employee's action is unexpected by the employer and not of the kind he is employed to perform by adopting the law expounded by the court in *Rounds v. Delaware, Lackawanna & Western R. Co.,* 64 N.Y. 129, 21 Am. Rep. 557 stating:

"It is in general sufficient to make the master responsible, that he gave to the servant an authority, or made it his duty, to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, and commits to him the management of his

business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another." *Orr, supra* at 590-91, 12 A.2d at 27; *Brennan v. Merchant & Co.,* 205 Pa. 258, 54 A. 891 (1903); *Pilipovich, supra.*

Additionally, the extent of the authority of the agent may be proved by the attending circumstances and acts of the employee in relation to the business of the employer. *Sebastianelli v. Cleland Simpson Co.,* 152 Pa. Super. 203, 31 A.2d 570 (1943).

The law, as applied to the facts of the instant case, supported the jury's finding that the guard's actions occurred within the scope of his employment. First, under the guideline of the Restatement, *supra,* there was evidence that the guard's conduct was of the kind he was employed to perform. Specifically, the guard was employed, in part, and authorized by Spectaguard to make contact with and prevent entry to the concert by people who did not have tickets. (N.T. 151-54.) Since plaintiff was climbing the stadium's fence, it surely appeared obvious to the guard that plaintiff was the sort of person that Spectaguard paid its employees to make contact with and keep out of the concert. Secondly, the conduct in question, as conceded by defendants and established by the evidence, occurred within the authorized time and space limits. Without question, it occurred at the concert and on stadium grounds. Thirdly, the guard's actions as acknowledged by defendants and established by the evidence, served the purpose of Spectaguard by preventing an individual who did not have a ticket from entering the stadium.

Finally, regarding the force employed, Spectaguard's incident report from the night in question evidenced the fact that guards ejected people from the concert including people who did not have tickets and who climbed the fences surrounding the stadium. (Exhibit P-16.) The guard showed a lack of judgment but, under *Orr, supra,* such conduct does not necessarily extinguish an employer's liability. Under the instant circumstances, it was within the province of the jury to determine whether the guard's conduct was not unexpected by Spectaguard and whether Spectaguard and Electric Factory could be held liable for the tortious conduct of the guard. See *Orr, supra* (finding employee-guard who was hired to watch and protect property during a workers' strike was within the scope of his employment where the employee shot plaintiff-striker as he approached the employee and asked what he was doing to a fellow striker); *Sebastianelli, supra* at 207-208, 31 A.2d at 572 (finding employee-store detectives were within the scope of their employment where employees sought, searched and injured plaintiff-shoplifting suspects more than an hour after plaintiffs left the store); See also, *Fitzgerald, supra* at 107, 410 A.2d at 1272 (holding off-duty policeman, who was authorized at all times to carry a gun, was not within the scope of his employment when he shot a neighbor in a dispute over car keys following an evening of drinking).

Accordingly, judgment n.o.v. must be denied.

## II.

Defendants' request for, in the alternative, a new trial on this issue also failed.

A motion for new trial and a motion for judgment n.o.v. are mutually exclusive. *Manone v. Culp,* 350 Pa. 319, 39 A.2d 1 (1944). The court may grant a new

trial when a motion for judgment n.o.v. is made, but when such motion cannot be properly granted. *Smith v. Graham,* 101 Pa. Super. 604, 606 (1931). However, the court may not, as consolation, offer a new trial to a litigant who has been refused judgment n.o.v. *Lindner v. Friedel,* 414 Pa. 436, 200 A.2d 771 (1964); see *Butler v. Flo-Ron Vending Co., supra* at 644 n.6, 557 A.2d at 735 n.6 (stating that where the evidence is insufficient to support the verdict, the remedy in a civil case is judgment n.o.v., but not a new trial).

In the instant case, defendants did not argue why a new trial should be granted, nor could the court imagine any reason. Accordingly, this motion was denied.