Walker, Appellant, *v.* Strout Realty Agency.

Argued April 17, 1934.

Before TREXLER, P. J., KELLER, STADT-FELD, PARKER and JAMES, JJ.

*A. M. Christley,* and with him *L. M. Eakin,* for appellant.

*J. Campbell Brandon* of *Brandon, Brandon & Ross,* for appellee.

OPINION BY JAMES, J., November 19, 1934:

This is an action in trespass brought by Mary Walker, the appellant, for the death of her husband, Edwin T. Walker, who was killed by an automobile driven by an agent of defendant on December 5, 1930.

The jury by their verdict found the defendant negligent and absolved the deceased, Edwin T. Walker, of contributory negligence and under instructions by the learned trial judge, brought in a verdict for nominal damages. That part of the charge relating to the measure of damages reads as follows: "There is no proof here that at the time he was killed that he had any income or would have any income, was earning any money from which the plaintiff could derive any advantage. It is not what a man earns but what advantage is derived from his earning power that the wife is entitled to a verdict by reason of his earnings, and there is nothing of that entering into the case under the testimony produced in this particular case. As a result of that, you will, if you find a verdict for the plaintiff, simply find a verdict in nominal damages. That may be, as we sometimes put in a deed, a dollar, or sometimes hear verdicts of six and one-fourth cents, but there is nothing in the proof that will sustain anything more than nominal damages."

The jury returned a verdict for plaintiff for 6¼ cents. Plaintiff's motion and reasons for a new trial, the 4th reason being the instructions as above set forth as to nominal damages, was refused, hence this appeal.

Counsel for appellant has filed six assignments of error. Assignment No. 3 apparently is intended to

cover that part of the charge of the court as to nominal damages, above quoted. We will treat it as so doing.

The deceased husband was a man 85 years of age and had an expectation of life, according to the mortality tables, of 2.8 years. Plaintiff and deceased had been married between thirty-one and thirty-two years. As to his habits of industry and capacity for work we quote the following testimony:

Plaintiff testified. "Q. Was he employed all the time on work around the house and on the farm? A. Well, most of the time he was; of course he always neighbored in the fall with people threshing; that way he was always away a while at a time, but he generally always had work, you know, at home to keep him busy. Q. Was he an industrious man? A. Yes, he was, very. Q. Was he working at something all the time? A. Yes, sir, (67a). James Fockler, a son-in-law, testified; Q. Did you know Edwin T. Walker? A. Yes, sir. Q. He is your father-in-law? A. Yes, sir. Q. How long have you known him? A. Four years Christmas time. Q. What was the condition of his health during that time you knew him? A. Very good. Q. Was he an active man? A. He was. Q. Would he make a hand with other men? (Objected to) Q. State whether or not he was working at something practically all the time. A. He was; he worked, he was very busy on the farm with his farm work, had it right along, always right along at the proper time. Q. Do you know anything about his building or helping to build those houses? A. I do. Q. Did you work with him? A. I did. By the court; Q. You say you have known him for four years? A. Yes, sir, four years this Christmas time. Q. What kind of activities was he capable of entering during the past four years and particularly just before his death? A. Well, he was very active and husky; seemed to get around very good; he was very active and husky; he wasn't a very large man,

but he was very husky for his size and age. Q. Now, he was a man of eighty-five years of age? A. Yes, sir. Q. What effect had his age on his activities at that time, at the time of his death? Had he slowed up? A. Well, now, the only thing I could notice is he was a little nervous, that was all, but otherwise he would get around very good. Q. How was he on his feet? A. Very quick, sure footed; he could walk faster than I could. Q. Did you know of any existence of organic trouble? A. I do not. (79a, 80a, 81a) J. B. Barnhart, a neighbor testified;—Q. Was Mr. Walker a healthy man? A. Yes, sir, Mr. Walker at his age was as stout a man as we had in Concord Township. Q. How was he as a hand to do physical work? (Mr. Brandon) When? Q. At the time of his death? A. Well, in the year 1930 I helped build that house where he resided at the time of his death. Mr. Walker purchased that house from J. P. Haney and he come over there and he helped me to tear it down and he worked every day with me up till the time I had it erected. ......Q. Mr. Barnhart, Mr. Walker worked with you? A. Yes, sir, and he also was—I worked, was his clerk on the election board.......Q. Do you know of any sales of stuff he made on the farm?......A. I know he always had oats and stuff like that and hay, plenty of it; he produced it there; there is no argument to anybody. Q. Do you know his selling any hogs to you? A. No, he never sold no hogs to me, but he worked for me over there, threshed and I paid him. Q. What did you pay him? A. At that time I paid at the rate of $4.00 a day. That was in the year 1929. ......By the court. Q. When was it that he worked for you? A. He worked in the fall of 1929 and he was killed in 1930, December 5th......Q. Now what did you pay him? A. I paid him at the rate of $4.00 a day; I paid all my threshers that. By the court. Not what he paid the others; just what he paid this man.

A. Well, I paid Mr. Walker $4.00 a day. Q. Now, did you work with him in the building of that house? A. I did. Q. Did he do as much work as you did? A. He did, yes, sir. Q. Was he an exceptional man for his age? A. He was. (67a, 68a, 69a, 70a, 71a) David Gold another neighbor, testified,—Q. Did you know Edwin T. Walker? A. I do—I did. Q. How long had you known him? A. Oh, forty years. Q. What was his general condition of health? A. Good. Q. Did you ever know him to be sick? A. I never did. Q. Had you known him intimately? A. Oh, yes, yes, sir. Q. Neighbor to him? A. Yes, sir. Q. Was he a man that could do a day's work and did? A. He could. Q. Did that continue up to the time of his decease? A. Yes, sir, it did; he built two houses just before he was killed, a short time. Q. Did he work on those houses? A. He did,—on the—Yes, the last house was built by contract; but the first one he worked on. (75a, 76a.)''

According to this testimony Edwin T. Walker, although 85 years of age, was a strong, active, vigorous and industrious man. He was constantly employed, up to the day he was killed, either working on or about his own farm, or ''neighboring.'' He ''made a hand.'' He raised and sold grain, hogs, and butter. In 1930, the year in which he was killed, he, together with Mr. Barnhart, built the house in which he lived. In the fall of the year 1929 he worked for Mr. Barnhart helping to thresh and was paid by Mr. Barnhart at the rate of $4.00 per day.

In the recent case of Pilipovich et al. v. Pittsburgh Coal Co., — Pa. —, 172 A. 136, in an opinion by DREW, J., we find reiterated what has been the general rule of damages applicable to actions resulting in death to be as follows: ''The true measure of damages is the pecuniary loss suffered without any solatium for mental suffering or grief and the pecuniary loss is what

the deceased would probably have earned by his labor, physical or intellectual, in his business or profession if the injury that caused death had not befallen him, and would have gone to the support of his family. In fixing this amount consideration should be given to the age of the deceased, his health, his ability and disposition to labor, his habits of living, and his expenditures.'' In applying this rule to the facts of the present case, we believe there was sufficient testimony to enable the jury to estimate with reasonable accuracy the pecuniary loss to the widow in the death of her husband. In the very nature of the case this loss is not susceptible of exact proof. The jury knowing the circumstances of the parties and in the exercise of their practical common-sense, were as well able to estimate plaintiff's loss as perhaps any witnesses who might have been called. It would indeed be a harsh rule to hold that no recovery can be had for the death of an active aged person solely because specific earnings had not been established. No damages could be recovered for mental suffering or grief, but the jury should be permitted to allow reasonable compensation for the loss sustained by the plaintiff.

In McHugh v. Schlosser et al., 159 Pa. 480, cited by appellee, *no* evidence was given tending to show the earning powers, or the habits of industry and thrift of the deceased. The same is true of McKenna v. Gas Co., 198 Pa. 31, the other case on this point cited by appellee. This easily distinguishes these cases from the case at bar. In the instant case there was ample evidence as to the habits of industry of the deceased husband, his disposition and ability to labor, and, at least, some evidence of his earning power.

In Burns v. Penna. R. R. Co., 219 Pa. 225, Mr. Justice MESTREZAT said: ''The plaintiff was entitled to recover the pecuniary loss which she suffered by the death of her husband, and, as this court has deter-

mined time and again, the loss in such case is what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and what would have gone for the benefit of his widow, taking into consideration his age, ability and disposition to labor, and his habits of living and expenditure.'' In Simpson v. Penna. R. R. Co., 210 Pa. 101, 59 A. 693, the court said: ''It is error to submit to a jury the loss of earning power as an element of damages in the absence of any proof upon the subject. But such proof need not be clear and indubitable to entitle it to go to the jury. Except where a fixed compensation is paid for services rendered, there can be no certainty.''

This court said in Hammaker v. Watts Twp., 71 Pa. Superior Ct. 554, in an opinion by Judge KELLER: ''The law very properly regards human life as having pecuniary value to those injured by its untimely ending through the negligence of others, and is not too exacting in measuring the standard of such value. Thus, in North Penna. Railroad Co. v. Robinson, 44 Pa. 175, a man seventy-five years old was killed through the negligence of the defendant, leaving four children, the plaintiffs, only one of whom lived with, or was dependent on, him. He left an estate of a rental value of $800 per year, which was divided among his children. In answer to the contention that, if but one suffered any pecuniary damage, the defendant was entitled to a verdict, the Supreme Court said: 'If we are careful to remember that the value of life lost, to be estimated by pecuniary standard is what is to be recovered for, we shall fall into no such error as in supposing that none but those who can show some actual damage are entitled to recover. If such were to be the rule, we should have the indecent spectacle of an investigation whether the loss of a parent or child was or was not in fact an advantage rather than a

loss; for certainly, if none be allowed to recover but such as are able to show a pecuniary loss, the defendant would, with great apparent reason at least, be entitled to claim the right to prove the contrary, and to show peradventure that, by the death, the party suing may have succeeded to an estate, or, on the other hand, had been relieved from the burthen of maintenance. In case of the death of aged persons or helpless infants, we might expect in the application of such a rule to have the point discussed whether the death was an actual loss or gain. The law means not to open the door to anything so shocking. It treats the value of the life lost as a species of property and gives it, where the children sue, to them in the same proportions as the personal estate of an intestate is distributed.' "

In our opinion the learned judge of the court below erred in charging the jury that there was nothing in the proof that would sustain a verdict for anything more than nominal damages.

Plaintiff's declaration contained no claim for funeral expenses and plaintiff having failed to amend his declaration, the court was clearly correct in refusing to submit the item for funeral expenses to the jury.

The third assignment of error is sustained, the judgment is reversed, and a venire facias de novo is awarded.