## DeSantis *v.* Maddalon, Appellant.

Argued November 29, 1943. Before Maxey, C. J., Drew, Linn, Stern, Patterson and Stearne, JJ.

Francis A. Wolf, with him Leo A. Nunnink, for appellant.

Francis J. O'Connor, with him Harry V. Bair, for appellee.

Opinion by Mr. Justice Horace Stern, January 3, 1944:

In this accident case, which culminated in a verdict of $10,000 for plaintiff, appellant challenges the sufficiency of the evidence to warrant a finding of negligence on his part.

The suit is by the widow of Lorenzo DeSantis on behalf of herself and children. Selecting the evidence most favorable to her, it appears that DeSantis was struck and killed about 11:30 o'clock on the night of October 19, 1938, on Broadway, Stowe Township, Allegheny County, by a taxicab owned by defendant and operated for him by his son. Broadway runs east and west, with a width from curb to curb of 38 feet. DeSantis lived on the south side of the street between Ninth and Eleventh Streets (apparently there is no Tenth Street intersecting Broadway). He came home that night in an automobile driven by a friend who let him out on the north side of Broadway diagonally across from and to the east of his home. This friend and another companion who was in the car then continued westwardly and, as they neared Eleventh Street, were passed by a taxicab going in the opposite

direction at a speed of from 45 to 55 miles an hour and with only its left headlight burning. There was no other traffic in the street. Almost immediately thereafter they heard a crash to their rear on Broadway, but paid no attention to it and proceeded on their way. Other witnesses saw the taxicab coming east on Broadway from Eleventh toward Ninth, and testified as to its great speed. Rain had been falling on and off for some time, and defendant's son said his visibility was limited to 25 or 30 feet, although other witnesses testified that the visibility was fairly good. The taxicab struck DeSantis some six feet out from the south curb, about three houses to the east of his residence, and with such force as to hurl him 20 feet forward and against the south curb, inflicting fatal injuries consisting of a fracture of the skull, a broken hand, and a fracture of the right leg with both bones protruding through the skin. The impact was at the right headlight of the taxicab and this headlight was wrenched off; the cab then skidded an approximate distance of 150 feet to Ninth Street.

It should be obvious from this recital that there was ample proof of negligence on the part of the operator of the taxicab. The defense was that DeSantis had stepped out from the south curb behind a parked automobile at such a short distance ahead of the cab as to make the accident unavoidable. This defense evidently failed to impress the jury, no doubt because DeSantis had been left by his friend on the *north* side of the street only a few seconds before the accident happened and his crossing of Broadway would have been from the north to the south side where he lived and not from the south to the north; incidentally, all his injuries were on the right side of his body. There is a factual presumption that he exercised due care, and nothing in plaintiff's case indicates anything to the contrary. While none of plaintiff's witnesses actually saw the accident, the sum total of their testimony, coupled with facts developed in the presentation of defendant's case, was sufficient to show how it happened and to justify its presentation to the jury.

It is contended that because no evidence was offered as to what part of decedent's earnings had been devoted to the support of his family the amount that should be awarded to plaintiff was necessarily speculative. However, it was shown that DeSantis and his wife had lived in their home on Broadway for five years; that they had five children, four of whom were minors ranging in age from 12 to 19 years; that he was fifty years old, in good health, a skilled mechanic, and held the same position with the Pittsburgh & Lake Erie Railroad Company for 25 years during which he never missed any time from work, his earnings averaging about $2,000 a year. Hospital and funeral expenses amounted to $1,055. The trial judge clearly explained to the jury that the measure of damages was not the future loss of decedent's earnings but the present worth of what his family would probably have received from those earnings. While ordinarily evidence should be presented in such actions of the amounts which the husband had been in the habit of turning over to his wife and children for their support, plaintiff's failure to offer such testimony does not warrant a reversal in the present case because the verdict does not reflect a greater sum than she would be entitled to had she and her children been receiving as little as one-third of his earnings. It was said in *Foster v. Butler County Light Co.*, 255 Pa. 590, 594, 100 A. 452, 454: "It is admitted that the court instructed the jury as to the proper measure of damages in the case, but it is claimed that there was no evidence upon which to base such instructions. The degree of proof in such cases must vary. It is frequently impossible to prove by direct evidence the actual amount in money contributed by a husband for the benefit of his wife and family. Several witnesses on the part of plaintiff testified as to the age of deceased, the expectancy of his life, his occupation, the wages he was receiving at and before the time of accident, the condition of his health, his habits of life as to industry, and that deceased was living with and keeping his wife and children.

This testimony, in our opinion, is sufficient to support substantial damages." In *Gentile v. Philadelphia & Reading Rwy.*, 274 Pa. 335, 339, 118 A. 223, 224, it was said: "What amount, if any, he had sent home does not appear, nor was such proof necessary, while sometimes offered as bearing on the question of earning capacity. A husband and father is presumed to perform the legal duty of supporting his wife and minor children; in any event, they are entitled to what the law would have compelled him to furnish them, whether he had previously done so or not." See also *Fuller v. Palazzolo*, 329 Pa. 93, 100, 197 A. 225, 229; *Walker v. Strout Realty Agency*, 115 Pa. Superior Ct. 169, 175, 175 A. 259, 262.

Judgment affirmed.