Kathryn H. McELROY, Admx. of the Estate of Thomas R. McElroy, Deceased, Plaintiff,

v.

CESSNA AIRCRAFT COMPANY, a corporation, and Teledyne Corporation, a corporation, Defendants and Third-Party Plaintiffs,

v.

SKYLINE MOTORS AVIATION SERVICE, INC., a corporation, Skyline Motors Aircargo, Inc., a corporation, Gilbert L. Dailey and Sheldon L. Kling, Third-Party Defendants.

Roberta VOGAN, Admx. of the Estate of Robert Vogan, Deceased, Plaintiff,

v.

CESSNA AIRCRAFT COMPANY, a corporation and Teledyne Corporation, a corporation, Defendants and Third-Party Plaintiffs,

v.

SKYLINE MOTORS AVIATION SERVICE, INC., a corporation, Skyline Motors Aircargo, Inc., a corporation, Gilbert L. Dailey and Sheldon L. Kling, Third-Party Defendants.

Civ. A. Nos. 78–927, 78–1103.

United States District Court, W. D. Pennsylvania.

Jan. 20, 1981.

John R. Gavin, Oil City, Pa., for Kathryn H. McElroy.

John Alan Conte, Conway, Pa., for Roberta Vogan.

Donald W. Bebenek, Pittsburgh, Pa., for Cessna Aricraft Co.

James P. McKenna, Jr., Pittsburgh, Pa., for Gilbert L. Dailey and Sheldon L. Kling.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

This is a diversity action for damages arising out of the crash of an airplane in Mercer County, Pennsylvania, on September 29, 1977. Jurisdiction is based on 28 U.S.C. § 1332(a) and the substantive law of Pennsylvania is controlling. Robert Vogan, the pilot, and Thomas R. McElroy died in the crash. Plaintiffs instituted these wrongful death and survival actions against Cessna Aircraft Company, pursuant to Section 402A of the Restatement (Second) of Torts, contending that Cessna manufactured a defective product which was the legal cause of the crash.[1] Cessna impleaded the owners of the airplane, Sheldon L. Kling and Gilbert L. Dailey, for contribution contending that the third parties were negligent in failing to inspect and discover the alleged defect prior to the mishap. Kling and Dailey filed a counterclaim against Cessna for damage to the airplane.[2]

Following a lengthy trial, the court submitted special verdict interrogatories to the jury. The jury found that Cessna manufactured and supplied a product that was defective and which defect was the legal cause, i. e., a substantial factor, in producing the deaths of decedents. The jury also found that Kling and Dailey were not negligent as alleged by Cessna. The jury awarded damages to Kathryn H. McElroy, Administratrix, against Cessna in the amount of $15,840 under the Survival Act[3] and $350,000 under the Wrongful Death Act.[4] The jury awarded damages to Roberta Vogan, Administratrix, in the amount of $0.00 under the Survival Act and $400,000 under the Wrongful Death Act. Finally, Kling and Dailey were awarded the sum of $130,000 against Cessna for property damage to the airplane.

Cessna now moves for judgment notwithstanding the verdict or for a new trial. For the reasons set forth herein, the court will deny the motions for judgment or new trial on the issue of Cessna's liability for damages. The court will also deny the motions with respect to the damage award to the Estate of Thomas R. McElroy. Finally, the court will deny the motion for judgment notwithstanding the verdict with respect to the damages award on behalf of the Estate of Robert Vogan, but the court will grant the motion of Cessna for a new trial limited to the question of damages to the Estate of Robert Vogan under the Survival and Wrongful Death Acts.

### II. *Discussion*

A. *The Motions of Cessna for Judgment or for New Trial on the Issue of Liability.*

Viewing all the evidence, and the inferences therefrom, in a light most favorable to plaintiffs,[5] the jury could have found that Cessna Aircraft Company manufactured a defective product which was a substantial factor in the death of decedents. Plaintiffs presented evidence and the jury found that two experienced pilots were killed while returning from Buffalo, New York to Beaver Falls, Pennsylvania, in a twin engine Cessna airplane, model 402B, on September 29, 1977.

Eyewitnesses testified that the plane was flying at an unusually low altitude in an area adjacent to Interstate 79, Mercer County, Pennsylvania. The weather was clear as the airplane suddenly banked to the right and disappeared below the treeline. The pilot accelerated the engines and the plane climbed slightly but struck the top of a large tree, burst into flames and disintegrated in a cornfield.

Competent experts testified on behalf of plaintiffs that the crash was caused by a

---

1. Plaintiffs also filed suit against Teledyne Corporation but the court granted summary judgment for that party prior to trial.

2. Cessna also impleaded various other third parties for contribution but the claims were dismissed prior to trial and no objection has been advanced with respect to those judgments.

3. 20 Pa.C.S.A., § 3373 *et seq.*

4. 12 P.S.Pa., § 1601–1604.

5. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc); *Thomas v. E. J. Korvette, Inc.,* 476 F.2d 471 (3d Cir. 1973).

manufacturing defect in the left manifold header that permitted heated gas and hot air to escape from the engine compartment to the left wing. The vapors ignited and in-flight fire occurred. The pilot was forced to decrease altitude and attempt an emergency landing in the farmland below. Plaintiffs argued, and the jury found that the decedents were forced to initiate extreme in-flight actions in an effort to accomplish an emergency landing due to the fire.

Cessna did not seriously contest at trial the presence of the crack in the left manifold header. However, the Company strenuously disputed the existence of an in-flight fire. Its defense was predicated on pilot error and the question of causation. Cessna contended that the pilots were practicing contour flying and this explained the low altitude rather than fire in flight.[6] In this altitude, they became distracted and inadvertently collided with a tree. In sum, Cessna argued that the crack in the header was not a substantial factor in the death of decedents.

Cessna also argued that the third-party defendants, Kling and Dailey, were negligent in failing to discover the defect during regular inspections of the airplane and such negligence either constituted a superseding cause, or entitled Cessna to contribution.

■ The questions of defect,[7] causation,[8] superseding cause[9] and negligence[10] were submitted to the jury under Pennsylvania law.[11] The issues were hotly contested and ably presented by prominent counsel. The jury resolved all questions of fact against Cessna and there is substantial evidence to support the verdict. Cessna's motion for judgment N.O.V. must be denied. *See, Ne-*

*ville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1210 (3d Cir. 1970).

Cessna next contends that a new trial is warranted for several reasons. We will discuss these contentions in sequence but its first contention, namely, the verdict is against the weight of the evidence, requires little discussion. As we have noted, there is credible evidence concerning the defect in the manifold header, the in-flight fire in the left wing and the resulting effort of the pilots to combat the emergency. Voluminous evidence was produced to support plaintiffs' theory of the case and we cannot say that the verdict of the jury is against the weight of the evidence.

Cessna now contends that the court failed to instruct the jury concerning superseding or intervening cause. We disagree. The court instructed the jury concerning this issue under Pennsylvania law[12] and defendant did not object to the charge of the court.[13]

■ Cessna next argues that the verdict is tainted because the trial judge refused to instruct the jury regarding substantial change. The court's refusal was justified, however, since the record is devoid of evidence that the manifold header was changed following the sale of the airplane. Cessna's reliance on the testimony of Leo Talbot is misplaced.

Defendant asserts that Talbot testified the engines had been rebuilt one year before the accident. We agree but he also testified that this did not include the left header for, as he noted, a manifold header is not replaced when an engine is rebuilt. Moreover, Robert LaPierre, an expert em-

---

6. Contour flying is flight at tree level with altitude changes as indicated by the topography of the ground.

7. Record at 39–40.

8. Record at 41, 54.

9. Record at 42–43.

10. Record at 41–42, 56.

11. The Pennsylvania Supreme Court has interpreted these concepts in *Azzarello v. Black Bros. Co., Inc.,* 480 Pa. 547, 391 A.2d 1020

(1978) (defect); *Whitner v. Von Hintz,* 437 Pa. 448, 263 A.2d 889 (1970) (causation); *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977) (superseding cause); and *Ravis v. Shehulskie,* 339 Pa. 161, 14 A.2d 70 (1940) (negligence). *See also, Greco v. Bucciconi Engineering Co.,* 407 F.2d 87 (3d Cir. 1969) (applying Pennsylvania Law.)

12. Record at 42–43.

13. Record at 57.

ployed by the National Transportation Safety Board who examined the wreckage, testified that the exhaust header was an "on-condition" item and, as such, is not removed with the engine unless some defect is apparent. Further, he inspected the log books of the plane to resolve the question and concluded: "I did not find evidence that that part had been replaced." We hold that Cessna's requested instruction concerning substantial change was properly rejected due to the absence of any evidence to support the theory.[14]

Cessna finally asserts that a new trial is warranted for alleged trial errors as follows:

(1) improperly admitting the rebuttal testimony of George Foster and William J. O'Donnell;

(2) permitting the testimony of George Dorn without compliance with Rule 5–II of this court;

(3) permitting expert testimony beyond the scope of a written report; and

(4) permitting opinion evidence without qualification or expertise.

■ The first contention is without merit. Dr. George Foster, a metallurgist, testified during plaintiffs' case in chief that a crack in the left manifold header permitted gases to escape to the wing and produced an in-flight fire. This opinion was based upon an examination of the firewall which indicated temperatures exceeding 1000° Farenheit. Defendant's experts rejoined that this was impossible due to the presence of grease on the firewall, since grease would dissipate under such temperatures. Rebuttal testimony was proper to permit Dr. Foster to explain, if he could, the presence of grease on the firewall once defendant introduced testimony of the significance of the foreign substance. Foster's explana-

tion that the substance emitted from the engine nocelle to the firewall following the crash was proper rebuttal evidence.

■ The same reasoning applies to the testimony of Dr. William J. O'Donnell. He was retained by the third-party defendants as an expert, and when not called as a witness for the defense, plaintiffs sought to use this witness to negate Cessna's evidence concerning the eruption of the fire subsequent to the impact. The rebuttal testimony was limited by the court to the functioning of the fuel selector valve while in flight and when viewed with Cessna's evidence concerning the condition of the valve following the crash, and the conclusions to be drawn therefrom, the evidence was properly admitted.

■ Defendant's next contention, that is, the testimony of George Dorn was admitted in contravention of Rule 5–II of this court, is equally without merit. Rule 5–II–C–2–(b) provided, at the time of the pre-trial procedures applicable to this case,[15] that counsel for the plaintiff shall file "a copy of all reports containing the substance of the facts, findings, opinions and a summary of the grounds and reasons for each opinion of any expert whom a party expects to call as a witness at the trial." [16] The purpose of the rule is to prevent surprise.

George Dorn is a qualified expert who investigated the instant matter on behalf of the Pennsylvania Bureau of Aviation. He concluded in a written report to that agency that a fuel leak occurred outboard of the left engine nocelle and this led to a fire in flight. His opinion concerning in-flight fire was consistent with the theory of liability of plaintiffs set forth in the complaints, answers to interrogatories, pre-trial narrative statements and the expert reports of

---

**14.** For a discussion of when substantial change may present a question of fact for a jury, *see Merriweather v. E. W. Bliss Co.*, 636 F.2d 42, (3d Cir. 1980).

**15.** The rule was amended effective September 1, 1980, and the amendment is not here relevant.

**16.** Rule 5–II–C–2–(b) provided:

A copy of all reports containing the substance of the facts, findings, opinions and a summary of the grounds or reasons for each opinion of any expert whom a party expects to call as a witness at the trial. If timely production of any such report is not made, the testimony of such expert shall be excluded at the trial, except upon consent of the other party or parties.

Luther Gatling, Michael L. Marks, George Foster, John Stan and Robert LaPierre, all of which were supplied to Cessna in advance of trial. Moreover, counsel for Cessna obtained a copy of Dorn's report prior to trial and, in order to insure fairness, the court permitted Dorn to be deposed by defendants while the trial was in progress.

Cessna's present objection is technical and unpersuasive. It cannot plead surprise because Dorn's opinion was consistent with plaintiffs' theory of liability and Cessna prepared a defense to meet head-on the theory of in-flight fire. Dorn's report was obtained in advance of trial and Cessna's counsel knew the precise matters to which this witness would attest. Finally, in response to Cessna's objection to the testimony by this witness, the court permitted the defense to depose Mr. Dorn to insure the right of confrontation.

Our ruling with respect to this witness was also consistent with the teachings of the Court of Appeals. *See, Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894 (3d Cir. 1977). In that case, the Court stated:

> Underlying the cases to which we have adverted are these basic considerations: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

559 F.2d 904–905. Thus, Cessna sustained no prejudice or surprise by Dorn's testimony and there is no evidence of bad faith or willfulness by plaintiffs since the name of the witness was included in their pre-trial narrative statement.

■ The final two urgings of Cessna for the grant of a new trial must also be rejected. The experts who testified in this case were all qualified to express opinions concerning the cause of the crash. Their opinions were consistent with their written reports and all parties were cognizant of the theories of liability in advance of trial. We are unaware of any rule which requires an expert to confine his testimony to a reading of a written report. An expert must be accorded the right to explain to the jury findings that may otherwise be incomprehensible. Indeed, Rule 5–II is consistent with this rationale since it requires a written report of "the substance of the facts, findings, opinions and a summary of the grounds and reasons for each opinion of any expert ..." Plaintiffs have complied with the language and spirit of this rule and we perceive no error in the rulings of this court.

B. *The Motion of Cessna For Judgment or For New Trial on the Issue of Damages to the Estate of Thomas R. McElroy.*

Cessna next contends that the award of damages to the Administratrix of the Estate of Thomas R. McElroy should be set aside because the widow allegedly committed perjury when she testified as to her name. Counsel for Cessna asserts that following the trial he discovered that Kathryn McElroy had remarried. Thus, it is urged that plaintiff intentionally attempted to mislead the court and jury by giving her name as Kathryn McElroy, when in fact it was Kathryn Houlihan at the time of the trial. "Obviously," counsel for Cessna concludes "the fact was material since it led to the perception of Mrs. McElroy in her role as administratrix and grieving widow." Brief of Defendant in Support of Motion for New Trial at 13.

■ We disagree. It is a well-settled rule of Pennsylvania jurisprudence, and in most jurisdictions, that evidence of remarriage is generally not admissible in a wrongful death action. *See, Haddigan v. Harkins*, 441 F.2d 844 (3d Cir. 1970); *Philpott v. Pennsylvania R.R.*, 175 Pa. 570, 34 A. 856 (1896); STEIN, DAMAGES AND RECOVERY: PERSONAL INJURY AND DEATH ACTIONS at 540–543 (1972). Pennsylvania courts have reasoned that the rights of survivors are fixed at the moment of death, and whether a widow is grieving, or has remarried, is irrelevant to the assess-

ment of damages under the Wrongful Death or Survival Acts. *See, Evans v. Reading Company,* 242 Pa.Super. 209, 217, 363 A.2d 1234 (1976).

We note also in this case that counsel for Cessna failed to object to the surname identification of the Administratrix or bring to the court's attention the alleged perjurious testimony. Thus, even if we assume a timely objection, and assume further that the testimony of the witness was contrary to the actual facts, we are confronted with the question of whether such evidence is relevant and probative.

█ Rule 401 of the Federal Rules of Evidence limits admissible evidence to evidence that relates to facts of "consequence to the determination of the action." Rule 403 provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by danger of unfair prejudice." In our judgment, the objection of Cessna is untimely but more importantly the evidence is inconsequential to the determination of the action. *See* McCormick on Evidence §§ 36 and 185 (2d ed. 1972).

The jury returned a verdict for Kathryn H. McElroy, Administratrix, in the sum of $15,840 under the Survival Act, and $350,000 under the Wrongful Death Act. This court may not set aside a jury's verdict, which is fair as to amount and supported by substantial evidence, for a contradiction on a collateral matter. The motion of Cessna Aircraft Company for judgment N.O.V. or for a new trial will be denied in all respects at civil action 78–927.

C. *The Motion of Cessna For Judgment or For New Trial on the Issue of Damages to the Estate of Robert Vogan.*

Roberta Vogan sought to prove her claim for damages through two witnesses. Gary Hall, an employee of Skyline Motors Aviation Service, attested to decedent's age and employment as a flight instructor from 1973 until his death. He has also supplied evidence of earnings and earning capacity. From these facts, Walter C. Dolde, an economist, projected the future loss of earnings. He then estimated the probable cost of personal maintenance during decedent's lifetime at 36 percent, and subtracted that sum from the projected future earnings. His estimation of the cost of personal maintenance was based on the highest percentage obtainable from the statistics of the United States Bureau of Labor. Based upon this calculus, the jury awarded plaintiff the sum of $0.00 under the Survival Act and $400,000 under the Wrongful Death Act.

█ For some inexplicable reason, the widow of Robert Vogan did not appear or testify at trial. No explanation was offered that this court may consider. The record is devoid therefore of any evidence of the amount expended by Vogan on her behalf, or received by her, during the marriage. In addition to support, there is no evidence of loss of services, companionship or cohabitation. In fact, there is no evidence from which we can infer that the couple ever lived together, including at the time of death. These deficiencies are grounds for a new trial under Pennsylvania law.

█ The benchmark for recovery under the Pennsylvania Wrongful Death Act is the pecuniary loss to the survivors.[17] To calculate this sum, the plaintiff must prove the life expectancy of the deceased, future earnings and the probable cost of personal maintenance during the period of life expectancy. Age, health, and personal habits are relevant. If the plaintiff sustains this burden, the record must also contain some evidence from which the jury may find the amount expended by the decedent, prior to his death, for the benefit of his family. Only then may a rational judgment be made of the pecuniary loss suffered by the survivors.

---

**17.** The Wrongful Death Act provides as follows:

    ... whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned.

12 P.S. Pa. § 1601–1604.

The Supreme Court of Pennsylvania sought to explain the elusive concept of pecuniary loss in *Gaydos v. Domabyl*, 301 Pa. 523, 152 A. 549 (1930). The Court stated:

> As a general rule pecuniary loss embraces the present worth of deceased's probable earnings during the probable duration of deceased's life, which would have gone for the benefit of the children, parent, husband or wife, as the case may be, and is broad enough to include the present worth of the value or probable services which would, in the ordinary course of events, be of benefit to one within this class.

301 Pa. at 530, 152 A. at 552; *see also, Pezzulli v. D'ambrosia*, 344 Pa. 643, 26 A.2d 659 (1942). The Court stressed that pecuniary loss "is not a matter of guess or conjecture, but must be grounded on reasonably continuous past acts or conduct of the deceased . . ." *Id.*

Again in *Pilipovich v. Pittsburgh Coal Co.*, 314 Pa. 585, 172 A. 136 (1934), Pennsylvania's highest court held that evidence of a decedent's age, health and habits was insufficient to authorize a verdict under the Wrongful Death Act. The Court ruled "the evidence furnishes no facts from which the jury can estimate with any degree of certainty the amount expended by decedent, prior to his death, for the benefit of his wife and children, or what they received from him, and to attempt to fix the amount that would have been so expended and received, had he continued to live, is only to guess and conjecture . . ." 314 Pa. at 591, 172 A. at 138.

This principle was applied in *Curnow v. West View Park*, 337 F.2d 241 (3d Cir. 1964), where the Court of Appeals reversed a verdict for the plaintiff under the Act and noted:

> The parties to this action agree that the *burden was upon the plaintiff to prove the probable cost of the decedent's maintenance during the period of life expectancy.* The parties further agree that the charge of the court was correct in this regard. However, the defendant argues that the plaintiff failed to sustain this burden; the plaintiff argues to the con-trary. We find that the record in this case is devoid of probative evidence from which the jurors could have determined the probable cost of the decedent's maintenance during her life expectancy. This deficiency is ground for reversal under the law of Pennsylvania. *While there is no requirement that evidence as to probable cost of maintenance be direct and precise, there is a requirement that it be sufficient to enable the jurors to make a fair determination.* The evidence offered by the plaintiff in this case failed to meet this requirement. (Emphasis added.)

337 F.2d at 242.

■ Evidence of past financial contributions is required whether the plaintiff is a surviving spouse or a child because pecuniary loss is not a figure which may be mechanically calculated from a decedent's projected earnings. Maintenance varies and it depends upon frugality, station in life, industry and usefulness, as well as the past history of contributions to the plaintiffs who seek recovery. *See, Pilipovich v. Pittsburgh Coal Co., supra*, 314 Pa. at 590–91, 172 A. 136; *Gaydos v. Domabyl, supra*, 301 Pa. at 530–531, 152 A. 549; *Curnow v. West View Park, supra*, 337 F.2d at 242; *Blackburn v. Aetna Freight Lines, Inc.*, 250 F.Supp. 289 (W.D.Pa. 1966); *Cromley v. Speich*, 19 F.Supp. 857, 858 (M.D.Pa.1937), aff'd, 94 F.2d 543 (3d Cir. 1938). Of course, there is no requirement of proof to a mathematical exactitude; *Smail v. Flock*, 407 Pa. 148, 154, 180 A.2d 59, 62 (1962), but some evidence is necessary for a jury to make a reasonable estimate of future contributions.

The administratrix, Roberta Vogan, relies upon *Walbert v. Farina*, 411 Pa. 400, 192 A.2d 404 (1963) and *DeSantis v. Maddalon*, 348 Pa. 296, 35 A.2d 72 (1944) to sustain the verdict. Those cases are distinguishable. In *Walbert*, there was evidence of marriage, cohabitation and support. The court reversed the verdict for the plaintiff due to inadequacy and granted a new trial. The court held that a temporary estrangement commencing one day before the husband's death did not authorize a finding of permanent non-support. In the instant case, the

record is devoid of evidence of cohabitation or support.

In *DeSantis*, the Pennsylvania Supreme Court upheld a verdict for a widow and five children under the Wrongful Death Act based upon evidence of marriage, cohabitation in a common abode for five years, good health and constant earnings by the deceased. The court explained:

> While ordinarily evidence should be presented in such actions of the amounts which the husband had been in the habit of turning over to his wife and children for their support, plaintiff's failure to offer such testimony does not warrant a reversal in the present case because the verdict does not reflect a greater sum than she would be entitled to had she and her children been receiving as little as one third of his earnings . . . . A husband and father is presumed to perform the legal duty of supporting his wife and minor children; in any event, they are entitled to what the law would have compelled him to furnish them, whether he had previously done so or not.

348 Pa. at 299–300, 35 A.2d at 73. Tracking the language of *DeSantis*, plaintiff argues the jury could presume that Robert Vogan would perform his legal duty to support stemming from the fact of marriage.

We disagree. First, the evidence in *DeSantis* is much stronger. There the parties resided together for five years and produced five children. The husband was employed and the jury was permitted to infer that a portion of his income was expended on behalf of his family. Here, however, we have no evidence that Robert Vogan contributed any funds to the support of his wife or that they cohabited for any period following their marriage.

Second, the fact that two individuals are legally married under Pennsylvania law does not necessarily create a legal obligation to support. In some instances, such as desertion or adultery, a separated spouse may succumb to the threshold test of "entitlement." *See*, MOMJIAN AND PERLBERGER, PENNSYLVANIA FAMILY

LAW, Sec. 6.9.3 (1978). More significantly, the amount of support varies widely from individual to individual, and the award in such cases is based on the needs of the recipient as well as any extraneous income a spouse may receive. *Id.*, Sec. 6.5.2.

While we do not intimate that Roberta Vogan was separated from her husband, or that the marriage was disharmonious, we emphasize that, under Pennsylvania law, the amount of support varies widely when assigned a monetary value and to permit a jury to presume that every wife has suffered some pecuniary loss due to the fact of marriage, without more, is speculative.

In short, the evidence in *Walbert* and *DeSantis* is consistent with the teachings of *Curnow v. West View Park, supra*, and the recent pronouncement of the Supreme Court of Pennsylvania in *Kaczkowski v. Bolubasz*, —— Pa. ——, 421 A.2d 1027 (1980). A "claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough." *Id.* at ——, 421 A.2d 1027.

In the evidentiary vacuum that existed in this case, the jury did not possess sufficient factual information to rationally estimate the pecuniary loss to Mrs. Vogan. The hypothesis that decedent would have contributed 64 percent of his future earnings to his wife may be totally accurate or completely inaccurate. Without some evidence to substantiate the estimate, we have no basis for determining whether the verdict of $400,000 under the Wrongful Death Act is reasonable or grossly excessive.

There is an additional reason for the grant of a new trial limited to damages. When the administratrix failed to appear and testify at trial, Cessna requested an instruction that the jury could draw an adverse inference that, if presented, her evidence would have been unfavorable to plaintiff. The ruling was denied. That ruling was erroneous.

Federal and state law provides that an adverse inference of fact may be drawn where, without explanation, a party fails to call witnesses or present evidence that would be expected under the circumstances.[18] The rule applies with particular force

---

**18.** *Dunlap v. G. & C. Towing, Inc.*, 613 F.2d 493 (4th Cir. 1980); *Geiger v. Schneyer*, 398 Pa. 69, 74, 157 A.2d 56, 58–59 (1959).

when the witness is a party.[19]

Here, as we have noted, plaintiff failed to call as a witness the widow and personal representative, without explanation. Normally, a plaintiff would call the widow in a death action for she has knowledge that presumably would be favorable to the estate. Neither Mrs. Vogan nor any other relative testified at trial. Instead, plaintiff sought to elicit evidence from Kathryn McElroy and decedent's employer concerning the habits of Mr. Vogan. Under these circumstances, Cessna was entitled to an adverse inference instruction and the failure of the court to comply with defendant's request requires a new trial limited to damages.[20]

The court is satisfied that plaintiff presented sufficient evidence to withstand the motion of Cessna for judgment N.O.V. on the issue of damages. However, we will grant the motion of Cessna Aircraft Company for a new trial limited to the issue of damages to the Estate of Robert Vogan under the Pennsylvania Survival and Wrongful Death Acts at civil action 78–1103.

### D. *The Appropriate Relief.*

Rule 59(a) of the Federal Rules of Civil Procedure provides that "a new trial may be granted to all or any of the parties and on all or part of the issues ...." Since Cessna amicably resolved the property damage claim of Kling and Dailey following the verdict, and a stipulation to that effect has been filed of record, the motions of Cessna Aircraft Company relate only to the verdicts of plaintiffs. The court is confronted therefore with the question of whether the grant of a new trial as to damages at civil action 78–1103 requires that both actions should be retried on all issues, including liability and damages. We conclude that a partial new trial is appropriate.

The Supreme Court has held that "in the federal courts the general rule was stated ... in *Gasoline Products Co. v. Champlin*

*Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931):

> Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.

*See also, Heckman v. Federal Press Co.*, 587 F.2d 612, 619 (3d Cir. 1978).

The two errors which require the grant of a new trial relate to damages. The questions of economic loss to the widow and the failure of the court to instruct with respect to a witness as to damages, are distinct from the issue of Cessna's liability, and they are separate from the damage award to the Estate of Thomas R. McElroy. There is no basis for the conclusion that the verdicts may have affected the determination of liability, or represented a compromise of Cessna's liability. *Wagner v. Reading Co.*, 428 F.2d 289 (3d Cir. 1970); *Darbrow v. McDade*, 255 F.2d 610 (3d Cir. 1958). Wright and Miller, *Federal Practice and Procedure*: Civil § 2814 (1973).

Our analysis is fortified by the jury's verdict on behalf of the third-party defendants against Cessna. The fact that they also recovered on their property damage claim is evidence that the issues of liability and damages are not interwoven. We will grant a partial new trial limited to damages under the Survival and Wrongful Death Acts at civil action 78–1103. The motions of Cessna Aircraft Company will be denied in all other respects.

---

**19.** *Schwegel v. Goldberg*, 209 Pa.Super. 280, 284, 228 A.2d 405, 408 (1967).

**20.** The court permitted the parties to argue the question to the jury but the problem remains since the court denied the specific request of Cessna.