John E. KELLY and Mildred Ann
Kelly, his wife

v.

GAF CORPORATION, et al.

Civ. Action No. 82–5594.

United States District Court,
E.D. Pennsylvania.

March 31, 1987.

Hal C. Pitkow, Philadelphia, Pa., for
plaintiffs.

Charles J. Kalinoski and Nathan A.
Schachtman, Philadelphia, Pa., for defend-
ants.

MEMORANDUM AND ORDER

DITTER, District Judge.

This case comes before the court on
plaintiffs' motion for a new trial, the jury
having found in favor of the defendants.
Although plaintiffs advanced several rea-
sons in support of their motion, only one
need be considered as it shows a new trial
is required. Specifically, plaintiffs contend
and I agree that the tactics of defense
counsel were such that the jury's verdict
was not based on a full and fair considera-
tion of the evidence.

This is an asbestos case. Plaintiff, John
E. Kelly, is 39 years of age. For most of
his working life, he was employed at the
Philadelphia Navy Yard where he used and
was exposed to asbestos products manufac-
tured by the defendants. It is his conten-
tion that he has suffered physical damage
as the result of inhaling asbestos fibers.
His wife, Mildred Ann Kelly, also seeks
damages resulting from her husband's ex-
posure and from her own exposure in han-
dling his asbestos-laden clothes. Plaintiffs'
testimony came from four witnesses: Mr.
and Mrs. Kelly and two doctors. The pur-
pose of the two expert witnesses was to
show that plaintiff had pleural thickening,
a condition involving the lining around the
lungs, as a result of inhaling asbestos.
One of the doctors, Dr. G. William Atkin-
son, was unable to attend trial and so his
testimony was presented by video deposi-
tion. Dr. Atkinson was examined and
cross-examined at a time when I was not
present. Such a procedure in this district
is not unusual, but it obviously depends
upon the good faith efforts of counsel to
keep objections and bickering to a mini-
mum. Rather than to make any such ef-
fort, defense counsel, Charles Kalinoski
and Nathan A. Schachtman, took the oppo-
site approach. They made inconsequential
objections and so hindered the process that
Dr. Atkinson's deposition when finally
presented in court was a hodgepodge, com-
pletely lacking in direction and continuity.

Counsel in this case followed the custom-
ary procedure for resolving objections
raised during the course of the deposition.

After the notes of testimony were transcribed, at my direction they attempted to reach agreement on each open question. Where they were unable to do so, they obtained a ruling from me. If either by agreement or as the result of my ruling an objection was overruled and the colloquy in support of counsel's contention rendered irrelevant, the audio part of the testimony was simply blanked out when the jury saw and heard the tape. The result was an edited version of Dr. Atkinson's deposition: a question was asked, there was a silence because the operator then turned off the objectionable colloquy, and finally an answer was given. This procedure provides a fertile field for mischief. An irresponsible attorney can make any number of objections, ranging from frivolous to spurious. The more he makes, the better things are in his favor. When the time comes to present the deposition in court, he can withdraw the objections or permit them to be overruled by the court. In any event, the result is a video presentation where there will be long pauses, a squeal or two from the television set, and the amusing spectacle of a witness jiggling around while the tape is speeded up until the next usable portion of the testimony is reached. That is exactly what happened in this case and the result was that plaintiffs were denied the effective presentation of evidence that was crucial to them.

One example will suffice: consistent with Local Rule 26 and Fed.Rule Civ.Proc. 35(b), a copy of Dr. Atkinson's report had been furnished to defense counsel in advance of the taking of his video deposition. One of the favorite objections of Messrs. Kalinoski and Schachtman was that Dr. Atkinson's testimony went beyond the scope of his report. For example, Dr. Atkinson stated in his report that he had reviewed certain xrays. He did not state that these were the only xrays he had examined, but when he was being deposed, Messrs. Kalinoski and Schachtman objected because he made reference to other xrays. N.T. III–111 through 118. In a similar vein, Dr. Atkinson stated in his report that Mr. Kelly had a medical history of pleurisy. During the deposition he was asked about multiple pleurisies. This evidence was objected to on the grounds that it was not only outside the scope of the report but was an attempt by plaintiffs to "put their rebuttal into their case in chief." N.T. III–115. Frivolous objections such as these destroyed the effectiveness of Dr. Atkinson's testimony. Because they were so unwarranted and unremitting, I can only conclude that they were made in bad faith. I do so for the following reasons:

First, there was no agreement in this case, nor is there any local custom, practice, or rule of which I am aware that limits an expert's testimony to the strict confines of his report.

Second, in *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir. 1978), the Court of Appeals noted that the exclusion of testimony by a trial judge is a drastic sanction and specifically held that it was reversible error to exclude the testimony of a doctor just because it included information not found in his report. *See also McElroy v. Cessna Aircraft Co.*, 506 F.Supp. 1211 (W.D.Pa.1981).

Third, Rule 26(b)(4) provides the exclusive way for the discovery of facts known and opinions held by experts. The language of Rule 26(b)(4) shows that it is not contemplated that a report will be the best way, much less the exclusive way, to learn exactly what a doctor will say at trial.

Fourth, counsel's attempt to exclude Dr. Atkinson's testimony was unreasonable because it was not their only means to combat any prejudice they may have felt. They could have sought an opportunity to consult with their own doctor and then further cross-examine Dr. Atkinson. Even more important, any variance between testimony and report might have been exploited on cross-examination to impeach the doctor's credibility and provided an opportunity for defendants' doctor to comment about the conclusions Dr. Atkinson had reached.

Dr. Atkinson's deposition covered 146 pages of transcript. The objection that he was testifying beyond the scope of his re-

port was made ten times.[1] At best, the variances between Dr. Atkinson's testimony and his report were trifling, but counsels' objections together with their other 18 objections, were devastating. The interference with Dr. Atkinson's presentation is but one example of counsels' egregious conduct. There were many other instances of tactics that were designed to interfere and interrupt with a fair presentation of plaintiffs' case.[2] My warnings and admonitions to Mr. Kalinoski and Mr. Schachtman went unheeded. A new trial is required.

The question that remains is whether sanctions should be imposed against these two lawyers, their clients, or both. If within twenty days a motion for sanctions is filed, I will order an appropriate briefing schedule and provide an opportunity for counsel and the parties to be heard.

---

**1.** Videotape deposition of G. William Atkinson, M.D., document number 122, pp. 50, 51, 54, 56, 57, 57–58, 66–68, 70, 122, and 150.

**2.** Though not exhaustive, the following page references are illustrative: II–11, 14, 15, 17, 19, 21, 23, 24, 25, 26, 39–43, 51; III–3–6, 32, 71–91, 98; IV–9, 10, 14, 23, 140, 153–54, 155, 156, 169; V–32, 38–39, 41, 42, 43, 44, 48, 51, 52–54, 56, 66, 75; VI–47, 102; VII–44, 45, 99; 100.